Diane L. KESTNER, Appellant,

v.

Christopher H. CLARK, Appellee.

No. S–11953.

Supreme Court of Alaska.

May 9, 2008.

Chrystal Sommers Brand, Chrystal Sommers Brand, Family Lawyer, Juneau, for Appellant.

Christopher H. Clark, pro se, Juneau, Appellee.

Before: FABE, Chief Justice, MATTHEWS and EASTAUGH, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

A mother sought modification of child support for her son, claiming that as a stay-at-home mother of two children from a subsequent marriage, she could not afford child support payments above the $50 monthly minimum. The father successfully obtained a ruling that the mother was voluntarily and unreasonably unemployed and that her potential income was $25,000 per year. The mother appeals the superior court's rulings on imputation of income, discovery, and attorney's fees. Because the superior court appropriately imputed income to the mother and did not abuse its discretion in its discovery rulings or computation of attorney's fees, we affirm its rulings in all respects.

## II. FACTS AND PROCEEDINGS

Diane Kestner and Christopher Clark were married on November 29, 1986 and divorced in 1995. They had one child, Nathan, who was born on August 5, 1990. In their child custody and support agreement, Diane and Christopher agreed that Diane would have sole legal and primary physical custody of Nathan, and Christopher would have regular visitation rights. At the time of the agreement, Diane planned to attend graduate school in Illinois in the fall of 1995. The parties agreed that Nathan would accompany Diane if she left the state. The agreement included the provision that "[u]pon [Diane's] completion of the graduate program, [she] agrees to use her best efforts to obtain re-employment in a reasonable job ... in Juneau, Alaska."

After graduating with a master's degree in sociology in 1997, Diane tried to find employment in Juneau with the State of Alaska but failed, and she remained in Macomb, Illinois. Christopher complained that Diane's efforts to find a job in Juneau were inadequate and moved that she be required to relocate to Juneau from Illinois. The superior court denied this motion but found that Christopher could "pursue a best interest determination for Nathan's custody." Christopher did not do so at that time. Diane married Terry Kestner in 2000 and they had two children who were two and three years old, respectively, in 2004. Diane left the work force in 2001 to care for all three children.

In 2004 Christopher moved to modify custody on the grounds that Nathan was about to turn fourteen and wanted to move to Juneau for high school. Diane conceded that her move to Illinois constituted a substantial change in circumstances but requested that the court appoint a custody investigator to determine the best interests of the child. The superior court granted Diane's motion, and in July 2004 the custody investigator recommended that Christopher have school-year custody of Nathan. The parents reached a settlement before the court's hearing, agreeing that Nathan would live with his father during the school year.

Following the change in custody, the parties sought to modify the child support payments. At the time of the divorce, the initial child support order required Christopher to pay $331 monthly.[1] Diane submitted her Civil Rule 90.3 affidavit on July 26, 2004.

---

1. This amount was subsequently reduced by the Child Support Enforcement Division to less than $300 monthly for a medical insurance offset.

The affidavit reflected that Terry and Diane owned three rental properties, which operated at a net loss of $483 in 2003.

Along with his Alaska Civil Rule 90.3 affidavit and 2003 income information, Christopher filed a cross-motion seeking Diane and Terry's 2003 joint income tax return. Christopher maintained that he needed discovery of her entire tax return because the tax schedule Diane had produced did not reflect whether she had any income other than her rental income. Diane refused to release her full income tax information, arguing that under Rule 90.3(e), she had provided all information necessary for the court to estimate her income.[2] Diane further claimed that "[n]owhere in the rule itself—not even in the commentary—is the entire tax return required—it all depends on the circumstances of each case."

Superior Court Judge Patricia A. Collins granted Christopher's motion to require Diane to file her entire 2003 tax return, which showed an adjusted gross income for Diane and her husband of $63,857. On October 6, 2004, the superior court ordered that Diane pay $50 monthly in child support. The court declined to impute income to Diane, finding that although her educational background "would suggest employability at a higher level than past earnings indicate, it [was] not unreasonable" for her to be a "stay-at-home" mother. Christopher moved for reconsideration because he had not had the opportunity to argue for imputed income before the court issued its child support order. The court treated the motion for reconsideration as a motion to impute income.

Diane filed her opposition to the motion to impute income, arguing (1) that she was not "voluntarily and unreasonably" unemployed or underemployed given the cost of child care[3] and her relatively low income[4] when she had been employed full-time; (2) that Christopher had not met the burden to obtain a variance;[5] and (3) that Christopher and his fiancée, Nicole Hartmann, had an estimated combined household income of $90,000–$100,000 with which to support one child (Nathan),[6] whereas Diane and Terry had a combined household income of $64,000 with which to support two children.

Christopher responded, urging the superior court to impute income to Diane and to hold an evidentiary hearing to establish the appropriate income. He maintained that the superior court must examine the totality of the circumstances in determining whether to impute income,[7] and that under the circumstances, Diane's unemployment was unreasonable. Christopher argued, among other things, that Terry's income was substantial, allowing Diane to stay at home, that "[p]aying support based on imputed income [would] not cause 'substantial hardship' for the children of her new family," and that Diane's "choice to stay at home rather than work force[d] [Christopher] and Nathan to finance the raising of the children of the new marriage."

The parties then proceeded to discovery, exchanging interrogatories and requests for production. Christopher objected to Diane's discovery requests, maintaining that his economic circumstances as custodial parent were not relevant, that the requests were burden-

2. Alaska Civil Rule 90.3(e) states that "each parent in a court proceeding at which child support is involved must file a statement under oath which states the parent's adjusted annual income and the components of this income as provided in subparagraph (a)(1)."

3. Diane estimated that annual child care costs in Macomb ranged from $9,360 to $10,242, depending on the provider.

4. Diane's 2001 gross income was $21,501 from two jobs.

5. See Alaska R. Civ. P. 90.3(c)(1); Schuyler v. Briner, 13 P.3d 738, 744 (Alaska 2000) (quotation omitted) ("Rule 90.3 only allows a support variance when the obligor parent demonstrates 'good cause upon proof by clear and convincing evidence that manifest injustice would result if the support award were not varied.'"); see also Coats v. Finn, 779 P.2d 775, 777 (Alaska 1989).

6. Diane argued that the Rule 90.3 commentary "also references not just the 'new spouse' but 'other persons in the household.' Thus, [Christopher's] fiancé[e], Nicole Hartmann, could fall under the rule under [Christopher's] interpretation."

7. Christopher cited Beaudoin v. Beaudoin, 24 P.3d 523, 528 (Alaska 2001), to support this proposition.

some, that the information requested was protected by the constitutional right to privacy, and that Diane inappropriately sought information about the economic circumstances of Christopher's fiancée, Nicole Hartmann.

Diane then filed a subpoena *duces tecum* for Nicole Hartmann, requesting that Nicole bring extensive income and expense information[8] to her deposition. Christopher moved to quash the subpoena, arguing that (1) Nicole was not a party and did not have an obligation to support Nathan; (2) Christopher's legal argument was not that he (and Nicole) could not afford to support Nathan, but rather that Diane has a duty to do so and that by not working and paying only poverty child support, she was not fulfilling that duty; and (3) the requested information was protected by Nicole's constitutional right to privacy. The superior court granted the motion to quash.

The superior court held an evidentiary hearing on March 4, 2005. Milton Barker, an economist, testified that the average wage of social and community service managers in Macomb County, Illinois was $47,602 and that the "range of wage rates for positions for which [Diane] would qualify ranged from a low of $20,593 to a high of $63,491." The court also heard testimony from the Kestners' accountant, who claimed that Diane's net take-home pay after paying child care expenses would be $14,129–$18,531. Finally, the court reviewed evidence produced during discovery, which showed that Diane's maximum gross income over a four-year period was $20,381, and that the Kestners' net worth as of March 2004 was $471,886.

The superior court entered its order regarding child support, imputing income to Diane and finding that Diane "would reasonably expect to earn approximately $25,000 per year if she chose to return to work." The court reasoned that while Diane's "de-

sire to stay at home with her young children is understandable and laudable, it is a voluntary decision based in large part on the fact that [Terry's] income and the family investments are sufficient to meet the family's needs." In response to Diane's claim that she should only be required to pay the minimum in child support, the court determined that "this argument conflicts with the basic premise of Civil Rule 90.3—that both parents should pay a fair percentage of their income or imputed income as child support." Diane filed a motion for reconsideration, which was denied. The court issued its order requiring Diane to pay $298.77 monthly in child support.

Christopher moved for a full $17,051 in attorney's fees, claiming that Diane's actions were in bad faith, in addition to $2,822 in attorney's fees related to discovery motions. Diane opposed, maintaining that the amount of fees sought was unreasonable, that her actions were "substantially justified,"[9] and that an award to Christopher would be "unjust" under Alaska Civil Rule 37(a)(4)(A)-(B).

The court ultimately granted Christopher $782 in attorney's fees related to discovery practice and ordered Diane to pay Christopher thirty percent of actual fees ($4,880.70) because Christopher was the prevailing party. Diane appeals the court's decision to impute her income, the court's discovery rulings, and the awards of attorney's fees.

## III. DISCUSSION

### A. Standard of Review

■ We reverse child support orders when we determine that the superior court abused its discretion or applied the wrong legal standard.[10] Whether the superior court used the right method of calculating child support is a matter of law to be reviewed de novo.[11] We review discovery rulings[12] and

---

8. Diane sought, *inter alia,* Nicole's pay statements for September 2004 to January 2005; Nicole's complete 2002 and 2003 income tax returns; Nicole's bank statements from January 2002 to the date of response; and all statements for investment accounts and accounts with any financial institutions from January 2002 to the date of response.

9. *See* Alaska R. Civ. P. 37(a)(4)(A)-(B).

10. *Beaudoin,* 24 P.3d at 526.

11. *Caldwell v. State, Dep't of Revenue, Child Support Enforcement Div.,* 105 P.3d 570, 573 (Alaska 2005).

awards of attorney's fees [13] for abuse of discretion, and determine that there has been an abuse of discretion when we are left with "a definite and firm conviction based on the record as a whole that a mistake has been made." [14]

### B. The Superior Court Did Not Err in Imputing Income to Diane Under Alaska Civil Rule 90.3(a)(4).

■ Diane appeals the superior court's order that she pay child support based on an imputed income of $25,000. While she concedes that her decision to leave the work force to care for her three children was voluntary, she challenges the superior court's finding that it was unreasonable. She emphasizes the permissive language in Rule 90.3(a)(4)—"the court may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed"—and contends that because of her economic circumstances, her decision to stay at home to care for her children is both practical and reasonable. As Diane correctly contends, *Beaudoin v. Beaudoin* explains that "Rule 90.3(a)(4) does not rigorously command pursuit of maximum earnings." [15] She points to the language of Rule 90.3(a)(4) itself, which forbids imputation of income to a parent "who is caring for a child under two years of age to whom the parents owe a joint legal responsibility." And while she concedes that the children for whom she provides care are not from the original marriage, she argues that "the superior court certainly should be able to consider the young age of siblings in determining the reasonableness of the decision." Diane points to the benefits that Nathan received from her staying at home when he lived with

her and emphasizes Christopher's acknowledgment that he does not need her financial contribution in order to provide for their son.

Christopher responds that while Diane's decision to stay at home may be subjectively reasonable for her new family, it is objectively unreasonable as a matter of law given her legal duty to support Nathan. Christopher acknowledges that he can afford to provide for Nathan but maintains that regardless of his financial situation, Diane's income should be imputed so that she can properly fulfill her obligation as the non-custodial parent.

■■ Although in most cases, the superior court considers an obligor's actual income in initially determining or later re-calculating a child support award, in some cases it may be appropriate to use an obligor's potential income:

> The court may calculate child support based on a determination of the potential income of a parent who *voluntarily and unreasonably* is unemployed or underemployed.... Potential income will be based upon the parent's work history, qualifications, and job opportunities. The court also may impute potential income for non-income or low income producing assets.[16]

When deciding whether to impute income, the superior court should consider the totality of the circumstances.[17] "Determining whether or not a parent is voluntarily and unreasonably underemployed is essentially a question of fact. The trial court should consider 'the nature of the changes and the reasons for the changes, and then ... determine whether under all the circumstances a modification is warranted.' " [18]

■ Parents have a paramount duty to support their children.[19] New obligations in-

**12.** *Miller v. Clough*, 165 P.3d 594, 601 n. 22 (Alaska 2007).

**13.** *Hixson v. Sarkesian*, 66 P.3d 753, 761 (Alaska 2003).

**14.** *Kowalski v. Kowalski*, 806 P.2d 1368, 1370 (Alaska 1991).

**15.** 24 P.3d at 530.

**16.** Alaska R. Civ. P. 90.3(a)(4) (emphasis added).

**17.** Although not controlling, the commentary to Rule 90.3 directs courts to consider "the totality of the circumstances in deciding whether to impute income." Alaska R. Civ. P. 90.3 cmt. III.C.

**18.** *Olmstead v. Ziegler*, 42 P.3d 1102, 1105 (Alaska 2002) (citation omitted).

**19.** *Nunley v. State, Dep't of Revenue, Child Support Enforcement Div.*, 99 P.3d 7, 11 (Alaska 2004) (citing *Matthews v. Matthews*, 739 P.2d 1298, 1299 (Alaska 1987)) ("Parents have both a common law and a statutory duty to support

curred after the birth of the parent's first child do not diminish that duty.[20] As the Mississippi Supreme Court put it, a rule relieving a parent of his obligation to support a prior child because of the birth of a subsequent child would "quite literally allow [ ] the non-custodial parent to sire himself out of his child support obligation."[21] Because of the significance of a parent's duty to meet his or her child support obligations, we prioritize fulfillment of that duty over even "legitimate" decisions to be voluntarily unemployed or underemployed.[22] As we have repeatedly recognized, a parent should not be relieved of the obligation to support his or her children except under the most extreme circumstances.[23]

Rule 90.3 and its commentary provide for limited exceptions to this general principle, none of which apply to Diane in this case. The superior court can find unusual circumstances meriting departure from the Rule 90.3 guidelines when requiring the obligor parent to meet her child support obligations under the rule "would cause substantial hardship to the 'subsequent' children."[24] The rule also allows superior courts to consider "the interests of the subsequent family . . . where an obligor proves he or she has taken a second job or otherwise increased his or her income specifically to better provide for a subsequent family."[25] Diane failed to prove that her child support obligation would cause substantial hardship to her subsequent children, and she has elected to leave the work force. As a result, these exceptions do not apply.

Diane analogizes her situation to the one anticipated in Rule 90.3(a)(4), which forbids imputation of income to a parent who is caring for very young children "of the marriage,"[26] and argues that the superior court erred in failing to give adequate weight to the young age of her children in evaluating the reasonableness of her decision to leave the work force. But the rule goes no further than to except obligor parents who care for children "under two years of age" who are "of the marriage" and "to whom the parents owe a joint legal responsibility" from strict adherence to the rule's guidelines. By negative implication, income *can* be imputed to parents who stay home with children of a subsequent marriage. Because we conclude that the superior court did not err in finding Diane's voluntary unemployment to be unreasonable, we uphold the imputation of income to Diane.

their children."); *see also* AS 25.20.030 ("Each parent is bound to maintain the parent's children when poor and unable to work to maintain themselves.").

**20.** Laura W. Morgan, *Positive Parenting and Negative Contributions: Why Payment of Child Support Should Not be Regarded as Dissipation of Marital Assets*, 30 N.M. L. Rev. 1, 3 (2000) ("When a parent cannot afford to support prior children and later children . . . , and someone has to bear the cost of that choice, the cost should be borne by the later children for the simple reason that the parent had the choice of whether to have additional children.").

**21.** *Bailey v. Bailey*, 724 So.2d 335, 339 (Miss. 1998).

**22.** *See Olmstead*, 42 P.3d at 1105 (where a father left his law practice to attend school to obtain certification as a teacher, we affirmed the trial court, which noted "that while [the father] was free to change jobs, [the mother] and their daughter did not have to finance that choice"); *see also Nass v. Seaton*, 904 P.2d 412, 418 (Alas-

ka 1995) ("[A] noncustodial parent who voluntarily reduces his or her income should not automatically receive a corresponding reduction in his or her child support obligation.").

**23.** *See, e.g., Houger v. Houger*, 449 P.2d 766, 770 (Alaska 1969); *see also Dunn v. Dunn*, 952 P.2d 268, 270–71 (Alaska 1998); *Kowalski*, 806 P.2d at 1371.

**24.** Alaska R. Civ. P. 90.3 cmt. VI.B.2; *see also Taylor v. McGlothlin*, 919 P.2d 1349, 1355 (Alaska 1996) (affirming superior court's finding that a father's three subsequent children would suffer "substantial prejudice" if the father's child support obligation were set at the level mandated by Civil Rule 90.3).

**25.** Alaska R. Civ. P. 90.3 cmt. VI.B.2.

**26.** The rule states, in relevant part, "[a] determination of potential income may not be made for a parent . . . who is caring for a child under two years of age to whom the parents owe a joint legal responsibility."

## C. The Superior Court Did Not Abuse Its Discretion in Requiring Discovery from Diane's Spouse While Not Permitting Discovery from Christopher or His Fiancée.

■ Diane maintains that the superior court erred by permitting discovery of her husband's finances but prohibiting discovery of information about Christopher's fiancée's finances. In explaining her ruling on these discovery motions, Judge Collins stated that while information about Diane and Terry, as the heads of the obligor household, was "either relevant or likely to lead to discovery of relevant evidence," information about Nicole's finances did not have "the same potential for relevance."

Diane argues that affirming these discovery orders would have negative policy consequences. She contends that any discovery of economic information should have been reciprocal because the economic information of both parents was equally relevant to the child support determination. But this argument reflects a misunderstanding of the procedural stance of her case: when one parent has primary physical custody, the question under Rule 90.3 is what amount of child support must be paid by the non-custodial parent—the obligor—to support his or her child while that child is not in his or her custody.[27] In other words, the process is naturally one-sided, focusing on the economic circumstances of the obligor parent. When the obligor has remarried, the income of the obligor parent's new spouse may be discoverable if the obligor is seeking a variance from the Rule 90.3 schedule based on financial hardship or where, as here, the obligor is a stay-at-home parent who does not work because of the income of the new spouse.[28] However, the income of the obligor's spouse will not normally be relied upon when calculating the obligor's child support payment.[29]

Given the procedural stance of this case, the superior court correctly determined that the Kestners' income information was discoverable and Christopher's fiancée's financial information was not.

## D. The Superior Court Did Not Abuse Its Discretion in Awarding Attorney's Fees Pursuant to Alaska Civil Rule 82(b)(2).

■ Diane contends that the superior court abused its discretion by awarding attorney's fees to Christopher. She argues that the superior court's decision was flawed in three ways. First, Diane claims that the superior court did not accurately calculate the award under Civil Rule 82(b)(1).[30] Second, Diane contends that the superior court erred by not stating its reasons for departing from the fee schedule of Rule 82(b)(1). Third, she maintains that the superior court erroneously relied on the schedule in Rule 82(b)(2) when it awarded thirty percent of Christopher's actual fees. Her argument for the use of Rule 82(b)(1) over (b)(2) is that the superior court issued a monetary judgment in this case.

But child support orders do not constitute monetary judgments.[31] As Christopher explains:

---

27. *See* Rule 90.3(a) cmt. IV.A:

The calculation of child support for the primary custodial case under 90.3(a) simply involves multiplying the obligor's adjusted income times the relevant percentage given in subparagraph (a)(2).... *[T]he rule assumes that the custodial parent also will support the children with at least the same percentage of his or her income.*
(Emphasis added.)

28. *See* Rule 90.3 cmt. VI.B.5 ("A parent who does not work because of the income of a new spouse ... may be assigned a potential income.").

29. *Id.* ("The income of a new spouse of either the custodial or obligor parent normally will not justify a variation in support.").

30. Diane filed a Rule 82(b)(1) fee schedule calculation. She disputed the monthly child support amount that was subject to the fee schedule, arguing that since she had agreed to pay $69.50 per month, the amount Christopher prevailed on was $229.27 per month during full months and $57.44 per month during the seventy-five percent reduced visitation summer months, for a total of $9,658.56. Diane recommended a total attorney's fees award of $1,931.71.

31. *See State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Inman v. Dean*, 902 P.2d 1321, 1323 (Alaska 1995) ("Each unpaid child support obligation is considered a 'judgment' because, like court-rendered judgments, child support arrearages are not subject to retroactive modification.").

[T]he award of prospective child support is not an appropriate kind of case to which to apply the schedule [of Rule 82(b)(1) ]. Unlike money judgment awards, there is no way to know, when prospective support is set, whether the support amount will continue throughout the child's minority. It is subject to modification for a variety of reasons, including substantial changes in the financial circumstances of either parent, and modification of custody....

Because Christopher did not recover a monetary judgment, Judge Collins appropriately relied on Rule 82(b)(2) to calculate the attorney's fees award.

### E. The Superior Court Did Not Abuse Its Discretion in Awarding Attorney's Fees Pursuant to Alaska Civil Rule 37(a)(4).

Diane argues that the award of attorney's fees related to discovery was not reasonable under Rule 37(a)(4). She questions the $2,822 that Christopher's attorney spent on discovery, claims that her actions were "substantially justified," and disputes Judge Collins's ruling that her "failure to meaningfully respond" to discovery was "unjustified." Finally, she contends that Judge Collins should have denied the award of attorney's fees because it was "unjust" under the circumstances to require her to pay Christopher's attorney's fees.

Christopher argues that Judge Collins's award of attorney's fees was appropriate. Christopher quotes Judge Collins's reasoning in support of her decision to award attorney's fees for costs incurred during discovery: Diane's "failure to meaningfully respond to discovery concerning her economic situation and related motion for protective order regarding that discovery was unjustified. [Diane's] economic situation and earning capacity is such that it is not unfair to impose fees related to the motion to compel discovery." Rule 37(a)(4) provides clear guidance to the superior court:

> If the motion is granted or if the disclosure is provided after the motion was filed, the court *shall*, after affording an opportunity to be heard, require the party ... whose conduct necessitated the motion ... to pay the reasonable expenses incurred in making the motion, including attorney's fees....

(Emphasis added.) Judge Collins explained that Diane "lost every contested motion associated with the modification request"; that Christopher incurred fees to quash Diane's subpoena *duces tecum*, to file the motion to compel discovery, and to oppose Diane's motion for protective order; and that the motion to compel was granted while the motion for protective order was denied.[32] Because she provided a detailed explanation for her decision and followed the clear guidance of Rule 37(a)(4), Judge Collins's award of attorney's fees to Christopher was appropriate and not an abuse of discretion.

## IV. CONCLUSION

We AFFIRM the superior court's decision in all respects.

CARPENETI, Justice, not participating.

---

**32.** Furthermore, Judge Collins did not grant Christopher's total requested discovery attorney's fees ($2,822), but instead awarded Christopher the $782 he spent "for work directly related to the motion to compel/opposition to motion for protective order."