*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANTHONY RUBEN OLIVERA, | ) | |
| | ) | Supreme Court No. S-16260 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-10538 CI |
| v. | ) | |
| | ) | O P I N I O N |
| RONALDA RENEE | ) | |
| RUDE-OLIVERA, | ) | No. 7224 – February 16, 2018 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Anthony Olivera, pro se, Anchorage, Appellant. Adam Gulkis, Law Office of Adam Gulkis, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

An ex-husband challenges three decisions made by the superior court during divorce proceedings. He argues that the court erred by (1) failing to enforce the mandatory disclosure requirements of the Alaska Civil Rules with regard to his ex-wife's financial information; (2) improperly valuing the marital home; and (3) awarding

attorney's fees against him for vexatious and bad faith conduct. We find no abuse of discretion or clear error in the court's rulings and therefore affirm the judgment.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Anthony Olivera and Ronalda Rude-Olivera (now Ronalda Rude) were married in December 1999 and separated in May 2014. They initially sought a dissolution but were unable to agree on the division of their marital assets; in December 2014 Ronalda filed for divorce.

Ronalda was the primary wage earner for the household during the marriage. Anthony's employment was "less consistent," and the parties' marital estate was burdened with "numerous debts."

Anthony and Ronalda had sold their Wasilla home in 2010 for $204,000, and they used $90,000 of the proceeds to purchase a foreclosed home in Campo, California, so that Anthony could "be near the U.C. San Diego Medical Center where he was supposedly undergoing cancer treatment."[1] Ronalda did not consistently live in the Campo house, returning to Alaska periodically for employment opportunities.

In 2013 Anthony and Ronalda used the Campo house as security for a $75,000 loan. In June 2014 the lender filed a notice of foreclosure. Anthony told Ronalda that he would return the house to the bank to pay off the loan if she quitclaimed her interest in the property to him, and in July 2014 she did so. But rather than return the property to the bank, Anthony borrowed money to bring the loan current. In September 2014 Anthony's girlfriend took over the loan payments for the property, and in November Anthony quitclaimed the property to her for $100.

---

[1]   The superior court observed that there was conflicting evidence in the record about whether Anthony really had cancer but did not make a finding one way or the other.

**B.** **Proceedings**

Once the divorce proceedings were commenced in December 2014, the parties exchanged financial declarations. In March 2015 Anthony moved to compel production of additional financial information from Ronalda. The superior court denied Anthony's motion, finding that Ronalda had complied with the requirements of Alaska Civil Rule 26.1 but noting that Anthony was free to make requests for specific information under the discovery rules. Anthony followed up with interrogatories, requests for production, and requests for admission, then filed a second motion to compel in September 2015 seeking updated financial information. The court granted this motion in part.

Trial was held over three days in late 2015 and early 2016. The parties primarily contested the characterization and value of the Campo property, a Native allotment in Trapper Creek, some vehicles and firearms, bank and retirement accounts, and debt. Both Anthony and Ronalda testified about the Campo property's value. Anthony used the tax assessment to argue that it was worth $95,600; Ronalda countered that in her opinion it was worth $208,000.

The superior court made preliminary findings orally and invited written closing arguments from the parties. It then issued extensive written findings of fact and conclusions of law along with a two-page property spreadsheet. The court characterized the Campo property, three out of five vehicles, two firearms, and most of the debt as marital. It found that the Native allotment, two vehicles, four firearms, and some personal loans were the separate property of one spouse or the other. The court accepted Ronalda's $208,000 valuation of the Campo property and voided her quitclaim of the property to Anthony. It then awarded 58% of the marital estate to Anthony, to include the Campo property, and it ordered him to make a $53,375.89 equalization payment to Ronalda secured by that property.

Ronalda moved for an award of over $45,000 in attorney's fees and costs, including enhanced fees for Anthony's allegedly vexatious and bad faith conduct. The court granted the motion in part. It observed that under ordinary circumstances it would not award Ronalda any fees because she was "in a stronger financial position" than Anthony. But it found that many of Anthony's "actions throughout the case [had] been conducted in bad faith, [had] been vexatious, and were largely for the purposes of delay and harassment," and for that reason it awarded Ronalda the "very modest fee" of $5,000; it noted that the award was "relatively small because of [Anthony's] poor financial position."

Anthony appeals.

## III.   STANDARDS OF REVIEW

"The equitable division of marital assets involves three steps: (1) determining what property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[2] We review the valuation of property for clear error because it is a factual determination.[3] Clear error exists "only when we are left with a definite and firm conviction based on the entire record that a mistake has been made."[4]

---

[2]     *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) (citing *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013)).

[3]     *Id.* (citing *Beals*, 303 P.3d at 459).

[4]     *Urban v. Urban*, 314 P.3d 513, 515 (Alaska 2013) (quoting *Barnett v. Barnett*, 238 P.3d 594, 597 (Alaska 2010)).

"We review discovery rulings and awards of attorney's fees for abuse of discretion."[5]  "A decision constitutes abuse of discretion if it is 'arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive.' "[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion In Its Discovery Rulings.

Anthony first argues that the superior court erred by allowing Ronalda to circumvent the mandatory disclosures requirement of Alaska Civil Rule 26.1, which lays out in some detail the financial and asset information that each party "in a divorce or legal separation case" is required to provide the other "without awaiting a discovery request."[7]  Anthony argues that his first motion to compel should have been granted because Ronalda had not yet provided all the required information.  He also argues that Ronalda never produced her 2014 tax return, which, he claims, meant that her "true financial position" was "hidden . . . from the [c]ourt," thereby "bias[ing]" the court's decision on the equitable division of the marital estate.

Under our civil rules, "a party who fails to make required pretrial disclosures 'without substantial justification' may not be permitted to use that information as evidence at trial, 'unless such failure is harmless.' "[8]  To prove error, therefore, Anthony must show that Ronalda failed to disclose "without substantial

---

[5]     *Gunn v. Gunn*, 367 P.3d 1146, 1150 (Alaska 2016) (quoting *Kestner v. Clark*, 182 P.3d 1117, 1121-22 (Alaska 2008)).

[6]     *Id.* (quoting *Roderer v. Dash*, 233 P.3d 1101, 1107 (Alaska 2010)).

[7]     Alaska R. Civ. P. 26.1(a), (b)(1).

[8]     *Urban*, 314 P.3d at 517 (quoting Alaska R. Civ. P. 37(c)(1)).

justification," that the failure was not harmless,[9] and that the court abused its discretion in declining to impose a sanction.[10]

Anthony's motion to compel contended that Ronalda's initial financial declaration had failed to supply required bank and pension account information, information about her Native corporation stock, and a list of personal goods and "[o]ther [a]ssets" as required by Rule 26.1. In her opposition to the motion Ronalda claimed that she had produced all the information then reasonably available to her, that she gave Anthony signed releases for other information, and that she supplemented her disclosures as she acquired more information about her Native corporation stock and bank accounts. The superior court denied Anthony's motion, but — because he was self-represented — it appropriately advised him that he was "at liberty to propound specific records and information requests as Civil Rule 34 requests for production and Civil Rule 33 interrogatories, which may be enforced by separate motion if necessary." Anthony served interrogatories, requests for production, and requests for admission the next day.

Anthony contends on appeal that the superior court erred in denying his motion to compel because he "should not [have] had to use Civil Rule 33 and 34 to obtain documentation and discovery that is REQUIRED under Civil Rule 26.1." But to the extent that there may been deficiencies in Ronalda's initial disclosures, Anthony has not shown that he was harmed by them. The court did not limit his ability to obtain discovery; rather, it invited him to make focused requests for information through the

---

[9]     Alaska R. Civ. P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule[] . . . 26.1(b) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.").

[10]     *Id.* ("In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.").

other channels available to him. Discovery rules are to be liberally construed, and "the superior court has discretion whether or not to order discovery."[11]

Anthony appears to have obtained most of the additional financial information he sought through this supplemental discovery, including Ronalda's employment records, account information, and 1099 tax forms from 2014. But he points out on appeal that he never received Ronalda's 2014 tax return. Ronalda's attorney represented at trial that the return had not yet been filed, and the court did not rule on Anthony's outstanding motion to compel its filing before the trial ended.

Anthony argues that Ronalda's failure to provide the return was an effort to "knowingly mislead the [c]ourt and withh[o]ld important financial information that is relevant to this case."[12] But the record suggests there were other means of obtaining the same information. Anthony argues, for example, that the tax return would have demonstrated that Ronalda voluntarily left a job that was paying her over $100,000 annually,[13] but Ronalda does not contest that income history; she admitted at trial that she once had an annual salary of $105,000 and in her trial brief that at one time it was $120,000. And even without Ronalda's 2014 tax return the superior court appears to have acquired an accurate picture of the parties' income history and income potential, as well as an accurate picture of their overall financial position. These and other equitable considerations led the superior court to award Anthony the greater share of the marital estate — 58%. Anthony has not shown that the court's understanding of the

---

[11]     *Douglas v. Glacier State Tel. Co.*, 615 P.2d 580, 593 (Alaska 1980).

[12]     Because Anthony is representing himself on this appeal, we construe his arguments liberally despite the underdeveloped briefing. *See Erkins v. Alaska Tr., LLC*, 355 P.3d 516, 518 (Alaska 2015).

[13]     Ronalda testified that she left the job after being given a choice to either resign or be terminated because of Anthony's continual harassment of her at work.

parties' financial positions was incorrect or that he was prejudiced in any other way by Ronalda's failure to produce her 2014 tax return.

Again, given the information available to the parties and the court, we see no abuse of discretion in the court's discovery rulings. And even if there were gaps in Ronalda's disclosures that the court could have required her to fill through appropriate discovery orders, Anthony has not demonstrated that the omissions harmed his case, requiring reversal.

**B.     The Superior Court Did Not Clearly Err Or Abuse Its Discretion In Its Valuation Of The Campo Property**.

Anthony next contends that the superior court erred in setting a value of $208,000 on the marital property in Campo, California. Neither party had the property appraised before trial; Anthony argues that "the only evidence entered showing the current value of the home" was a 2014 tax assessment of approximately $95,600.

But the court did have other evidence of value, including the testimony of both parties. Anthony testified that in his opinion the property was worth between $100,000 and $130,000 — more than the tax-assessed value. And Ronalda testified that in her opinion, based in part "on information from a local realtor" and in part on her own online research, the property was worth between $205,000 and $208,000.

Anthony argues that Ronalda's testimony was either inadmissible or not credible because it was based on hearsay. But "[i]n Alaska, lay testimony offered by the landowner as to property value is admissible because of the owner's presumed knowledge about the value of such property."[14] Because the owner's knowledge is

---

[14]     *Schymanski v. Coventz*, 674 P.2d 281, 286 (Alaska 1983) (citing *Wernberg v. Matanuska Elec. Ass'n*, 494 P.2d 790, 795 (Alaska 1972); *Gregory v. Padilla*, 379 P.2d 951, 953 (Alaska 1963)).

"presumed," admissibility need not rest on a foundation in research or expertise.[15] Furthermore, the foundational requirements of Alaska Evidence Rule 701 applicable to lay witness opinion generally — that the opinion be "rationally based on the perception of the witness and . . . helpful to a clear understanding of the witness's testimony or the determination of a fact in issue" — are deemed satisfied.[16] The fact-finder must still, of course, consider "the adequacy of the foundation" for the owner's opinion in assessing "the evidentiary weight to be accorded to such opinion";[17] thus, although an "owner's opinion of the value of his property is competent," it "may not be very persuasive."[18]

---

[15] *Briggs v. City of Palmer*, 333 P.3d 746, 747, 748-49 (Alaska 2014) (holding it was reversible error to rule that, in a condemnation case, a landowner "could not testify about damages based on the value of his property before and after [an] alleged taking" because of his lack of "expertise in property valuation"); *Osborne v. Hurst*, 947 P.2d 1356, 1357, 1361 (Alaska 1997) (applying "presumed knowledge" rule to affirm the admission of value testimony by out-of-state owners of Homer cabin over defendant's objection "that, beyond the actual purchase of the land, they had no 'basis upon which either of them could offer an opinion regarding its value' ").

[16] *See Keenan v. Wade*, 182 P.3d 1099, 1106 (Alaska 2008) (rejecting argument that landowner's opinions of value were inadmissible as failing to meet the lay witness requirements of Evidence Rule 701 "because we have held that a property owner's testimony regarding the value of his own land is admissible"); *see also In re Biddlescombe Int'l, L.L.C.*, 392 B.R. 909, 919 (Bankr. M.D. Fla. 2008) (explaining that Federal Evidence Rule 701 "has been interpreted to allow traditional forms of lay witness testimony, including the traditional practice of allowing an owner of property to testify as to its value").

[17] *Ethelbah v. Walker*, 225 P.3d 1082, 1092 (Alaska 2009) (citing *Schymanski*, 674 P.2d at 286).

[18] *Gregory*, 379 P.2d at 953, *cited with approval in Keenan*, 182 P.3d at 1106 n.16.

But the adequacy of the foundation and the evidentiary weight to be given the opinion "are matters which fall squarely within the trial court's discretion."[19]

There was therefore no abuse of discretion in admitting the parties' lay testimony as to property value. As for the court's decision to rely on Ronalda's testimony, we "grant especially great deference when the . . . findings require weighing the credibility of witnesses and conflicting oral testimony."[20]

The court noted that Anthony's estimate was based on the tax-assessed value, but it concluded that "Anthony's valuation is too low to be accepted as reliable" because of other evidence in the record. Ronalda's testimony is based in part on inquiries she had made into the area real estate market, both through online research on Zillow, a real estate website, and by contacting a local realtor. Both of these sources took into account comparable property sales and listings in the area.[21] The court also noted that Ronalda's valuation "is supported by the transaction history of the property, which indicates that it sold for $192,500 in 2002 and sold for $392,000 in 2005." And

---

[19] *Schymanski*, 674 P.2d at 286 (citing *Greenwood Ranches, Inc. v. Skie Constr. Co., Inc.*, 629 F.2d 518, 522-23 (8th Cir. 1980)); *see also Cartee v. Cartee*, 239 P.3d 707, 719 (Alaska 2010) ("[T]he evidentiary weight to be given to an owner's opinion testimony as to the value of his property falls squarely within the trial court's discretion." (citing *Schymanski*, 674 P.2d at 286)).

[20] *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 178 (Alaska 2009), *cited with approval in Stanhope v. Stanhope*, 306 P.3d 1282, 1287 n.15 (Alaska 2013); *see Limeres v. Limeres*, 320 P.3d 291, 301 (Alaska 2014) ("[G]iven that the court had only the parties' competing opinions on which to decide the property's value, we cannot see that it clearly erred by accepting Amy's.").

[21] *See Keenan*, 182 P.3d at 1104, 1106 (affirming superior court's reliance on lay owner's opinion of value that the superior court found "seems well[-]based on recent like property transactions" even though owner "is not an appraiser and has contempt for them").

Ronalda's higher value reflected facts about the property that the superior court found relevant, including that the house "is on a large parcel, [is] in relatively good condition, and has its own well." On this evidence, the court accepted "Ronalda's valuation as the most credible."

The record does not leave us "with a definite and firm conviction that a mistake has been made"[22] in the court's valuation of the Campo property at $208,000. The superior court weighed the testimony, considered its foundation, and arrived at a number that is supported by the evidence. Because the superior court did not abuse its discretion in admitting owner testimony of value or clearly err in determining that value, we affirm its decision on this issue.

C.     **The Superior Court Did Not Abuse Its Discretion In Making An Enhanced Attorney's Fees Award**.

Anthony's final argument on appeal is that the superior court abused its discretion in awarding Ronalda $5,000 in enhanced attorney's fees based on a finding of vexatious and bad faith conduct. Generally, a superior court may award costs and attorney's fees in a divorce action "based on the relative economic situations and earning powers of the parties" to ensure a "fairly equal plane" for litigation.[23] Anthony argues that the superior court ignored this principle when it awarded fees to Ronalda despite her superior economic position.[24] But the court clearly explained that its fee award was not

---

[22]     *Limeres*, 320 P.3d at 296 (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008)).

[23]     *Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991) (first citing *Burrell v. Burrell*, 537 P.2d 1 (Alaska 1985); then quoting *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1192 (Alaska 1987)).

[24]     Anthony also argues that attorney's fees should not have been awarded to Ronalda because she was represented pro bono. But pro bono representation does not
(continued...)

intended to even the playing field; rather, it relied on an exception to the general rule that permits an increase in "an award of attorney's fees where a party has acted in bad faith or engaged in vexatious conduct."[25] If a "court chooses to enhance a fee award, it must first identify the fees that would be awarded in the absence of bad faith, and then identify the nature and amount of the increase assessed due to the bad faith behavior."[26] An award of enhanced fees does not require that some amount of fees would have been awarded in the absence of bad faith.[27]

The superior court followed the required two-step process in this case. It first noted that "[i]n the absence of vexatious conduct, [it] would not award attorney's fees in this case because [Ronalda] is in a stronger financial position than [Anthony]." But it then found "that many of [Anthony]'s actions throughout the case had been conducted in bad faith, have been vexatious, and were largely for the purposes of delay and harassment." The order specifically incorporated the court's earlier findings about Anthony's conduct in the litigation, including his efforts to "hide marital assets" like the Campo house and his "attempt to damage Ronalda's reputation at work." The court also relied on "reasons stated in [Ronalda]'s motion," which included the fact that Anthony "used undue influence to obtain" title to the Campo house from Ronalda; "fraudulently

---

[24](...continued)
preclude recovery of fees. *Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 71 P.3d 845, 849 (Alaska 2003); *Gregory v. Sauser*, 574 P.2d 445, 445 (Alaska 1978).

[25]     *Kowalski,* 806 P.2d at 1373 (citing *Hartland v. Hartland*, 777 P.2d 636, 644 (Alaska 1989); *Horton v. Hansen*, 722 P.2d 211, 218 (Alaska 1986)).

[26]     *Urban v. Urban*, 314 P.3d 513, 516 (Alaska 2013) (citing *Kowalski*, 806 P.2d at 1373).

[27]     *See Mellard v. Mellard*, 168 P.3d 483, 488 (Alaska 2007) (affirming award of fees for bad faith and vexatious conduct where no award would have been made otherwise); *Rodvik v. Rodvik*, 151 P.3d 338, 351-52 (Alaska 2006) (same).

-12-                                                    7224

transferred" title to the Campo house to his girlfriend; harassed Ronalda at her workplace; failed to comply with discovery orders; "interfered with the delivery of subpoenas"; and delayed trial by filing numerous motions, "a meritless [interlocutory] appeal," and an impliedly meritless grievance against Ronalda's lawyer. Anthony does not challenge these underlying findings on appeal. Taken together they amply support the superior court's award of enhanced attorney's fees.

We do note that "one party's misconduct does not authorize the court to disregard the relative economic situations and earning powers of the parties."[28] But the superior court remained sensitive to Anthony's "poor financial position" in setting the enhanced fee award and cited that circumstance to explain why it was awarding "what it believe[d] [was] a very modest fee" of approximately 11% of what Ronalda had requested. This was not an abuse of discretion.[29]

Finally, we reject Anthony's contention that he was entitled to a hearing on attorney's fees. The court was allowed to decide the issue on the parties' written

---

[28] *Kowalski*, 806 P.2d at 1373.

[29] Anthony reiterates on appeal his argument before the superior court that $30,000 of the requested $45,000 in fees was at best questionable and at worst fraudulent. But the superior court's fees award — $5,000 — is significantly less than the $15,000 in fees that Anthony does not specifically dispute. We therefore do not consider further his arguments about the other $30,000.

submissions even if Anthony had asked for a hearing, which he did not do.[30] The court did not plainly err when it failed to order a hearing sua sponte.[31]

## V.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[30] *Alaskan Crude Corp. v. State, Alaska Oil & Gas Conservation Comm'n*, 309 P.3d 1249, 1258 n.34 (Alaska 2013) (noting that "ordinarily there is no right to a hearing on the issue of attorney's fees"); Alaska R. Civ. P. 77(e)(2) (listing motions on which oral argument is a matter of right:  "motions to dismiss; motions for summary judgment; motions for judgment on the pleadings; other dispositive motions; motions for delivery and motions for attachment").

[31] *See Moore v. Olson*, 351 P.3d 1066, 1077-78 (Alaska 2015) ("[W]hen a party fails to request an evidentiary hearing we will review a court's failure to sua sponte conduct an evidentiary hearing only for plain error." (citing *In re Estate of Fields*, 219 P.3d 995, 1011 (Alaska 2009); *Owen M. v. State, Office of Children's Servs.*, 120 P.3d 201, 2013 (Alaska 2005))).