*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| BRENT MCCORMICK, ) | |
| ) | Supreme Court No. S-15046 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-11-12131 CI |
| v. ) | |
| ) | O P I N I O N |
| CHIPPEWA, INC. and LOUIS OLSEN, ) | |
| ) | No. 6933 - July 30, 2014 |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Gerald W. Markham, Kodiak, for Appellant. Laura L. Farley, Farley & Graves, P.C., Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

I.      INTRODUCTION

Parties to a settlement agreement later disagreed on a material term of the agreement; they sought to enforce the agreement based on their respective understandings of the term. During summary judgment proceedings, one party asked for time to conduct discovery regarding the parties' intent. The superior court granted summary judgment to the other party and denied the discovery request as moot. Because

it was an abuse of discretion not to allow discovery before ruling on the summary judgment motion, we vacate the summary judgment order and remand so that appropriate discovery may be conducted.

## II. FACTS AND PROCEEDINGS

### A. Injury Complaint, Settlement Negotiations, And Settlement-Enforcement Complaint

On August 14, 2007, Brent McCormick suffered a back injury while pushing a net reel aboard the F/V CHIPPEWA, owned by Chippewa, Inc. The day after his injury McCormick was treated with ibuprofen. Later that night rough seas caused him to fall out of his bunk and hit his head. McCormick continued to suffer back pain and dizziness and later was treated by medical specialists in Anchorage.

In August 2010 McCormick filed a complaint against Chippewa, Inc. and Louis Olsen,[1] the vessel's captain, alleging "unseaworth[i]ness" of the F/V CHIPPEWA and negligence in failing to ensure workplace safety and provide proper medical care. Chippewa had a liability insurance policy with a $500,000 per occurrence limit, including a "cannibalizing" provision specifying that costs and expenses spent "investigating and/or defending any claim" would be deducted from the policy limit.

In early January 2011 McCormick's lawyer corresponded with an insurance claims adjuster, discussing the policy's terms. In a later email to McCormick's lawyer, the claims adjuster defined the "policy limit" as $500,000. McCormick's lawyer then hand-delivered a settlement offer to the claims adjuster, proposing to:

> unconditionally settle all aspects of all claims held by my client Brent McCormick . . . for any and all injuries occurring or arising out of . . . McCormick's 2007 employment on the F/V CHIPPEWA . . . in exchange for the "policy limits" of the [insurance policy] . . . .

---

[1]    Olsen and Chippewa, Inc. are referred to collectively as Chippewa.

The settlement offer described the claims as arising out of "two accidents" suffered by McCormick on August 14 and 15, 2007.

Chippewa's lawyer responded to the settlement offer on March 3, writing to "accept [McCormick's] demand for payment of the remaining policy limits . . . which has a Protection & Indemnity face limit of [$500,000]." The acceptance letter specified that "[a]t this point, we estimate the remaining limits are approximately $370,000." A proposed settlement agreement was attached.

McCormick's lawyer later sent Chippewa's lawyer a letter noting that he had indicated during a March 21 telephone conversation that he "viewed the policy limits in the . . . policy to be different than those [Chippewa's lawyer] estimated in [her] letter of March 3." McCormick's lawyer stated that he understood Chippewa's lawyer to have "responded [in that conversation] that regardless, it was [Chippewa's] intention in [the] letter of March 3 . . . to pay 'limits' what ever they may be (which was [McCormick's] offer's intent)." McCormick's lawyer indicated in his letter that deducting any further expenses and costs from the policy based on investigating and defending the claim should cease because "we have a settlement agreement in place." Attached to the letter was the settlement agreement, with McCormick's signature. McCormick then dismissed his complaint against Chippewa.

The settlement agreement McCormick signed released Chippewa from liability for "consideration of the remaining policy limits available under [the policy] which has a Protection & Indemnity face limit of . . . $500,000." The settlement agreement stated that the release from liability applied to "any and all claims . . . arising out of or in any way connected with all accidents and incidents . . . occurring on or about August, 14, 15, and/or 16, 2007."

McCormick's lawyer again wrote to Chippewa's lawyer requesting "communications regarding how underwriters are calculating 'limits' and . . . an

accounting of those items that they proposed being charged against [the limits] to arrive at this polic[y's] remaining limits." Chippewa's lawyer provided an accounting of the remaining policy limits, clarifying that the insurance company would make a payment of $424,040.05 to McCormick, consisting of the policy limit ($500,000), less costs and expenses for investigating the claim ($128,459.95), plus Alaska Civil Rule 82 attorney's fees ($52,500).

In November 2011 McCormick filed a second lawsuit, seeking to enforce the settlement agreement. The complaint stated that the "settlement [agreement] obligated [Chippewa] to pay [McCormick] the remaining 'policy limits available'. . . . However [Chippewa] . . . tendered an amount in satisfaction of their obligation that is substantially less than said remaining 'policy limits available.' " McCormick requested that the superior court issue an order directing Chippewa to "pay [McCormick] the amount they are obligated to by their settlement agreement" and enter a judgment for $100,000 in punitive damages.

Chippewa's lawyer sent McCormick a letter responding to the complaint and describing McCormick's action as "perplexing and . . . inconsistent with the status of this case." She wrote: "Our review of the correspondence clearly reflects that we had offer and acceptance of the remaining policy limits which were calculated as of April 13, 2011 to be $424,040.05."

McCormick's lawyer responded, confirming that there was an offer and acceptance to settle for policy limits. But he argued that Chippewa's acceptance was "made with full knowledge the parties might subsequently fail to agree to the amount of those 'limits' and litigation to determine them would follow."

Chippewa's lawyer responded with another letter stating, "[A]gain I am confused . . . . [Chippewa is] prepared to tender your client a check in the amount of $424,040.05 immediately." Chippewa's lawyer indicated she was "at a loss" as to what

McCormick wanted. McCormick's lawyer later indicated that Chippewa should answer the November 2011 complaint and that further negotiations would be unproductive.

Chippewa then filed its own motion to enforce the settlement agreement and a motion to dismiss McCormick's November 2011 lawsuit. Chippewa argued that a settlement agreement had been reached and must be enforced, and that McCormick failed to state a claim upon which relief may be granted.

## B. Discovery Requests And Pre-trial Motions

After filing his November 2011 complaint, McCormick sent Chippewa interrogatories requesting that Chippewa indicate "precisely what [Chippewa] contend[s] are the remaining 'policy limits available,' " and provide factual information related to Chippewa's claims and any affirmative defenses. Chippewa responded to the interrogatories in December 2011 but provided only cursory statements, citing other documents and stating, "Not applicable. *See* Motion to Dismiss."

In early 2012 Chippewa twice tendered to McCormick's lawyer a settlement check in the amount of $424,040.05. McCormick's lawyer rejected the first check because he believed it would be accord and satisfaction of the settlement agreement for less than what Chippewa owed. McCormick's lawyer rejected the second check because he believed the accompanying letter placed unacceptable conditions on endorsement. The rejection letter indicated McCormick "has never agreed that was [the] amount [and] that sum is less than the amount now due." McCormick then made an Alaska Civil Rule 68 offer of judgment for a total of $1.25 million. McCormick's lawyer subsequently sent a second set of interrogatories. The record does not indicate any response from Chippewa to the second interrogatories.

In March McCormick filed a partial summary judgment motion, arguing that the parties had reached an agreement to settle the case for "policy limits" but that the policy allowed for liability "per occurrence." According to McCormick there were three

occurrences — two accidents and a subsequent bad faith failure to provide maintenance and cure — entitling him to $1.5 million under the settlement agreement, plus Rule 82 attorney's fees on that amount, without deducting Chippewa's defense expenses.

In April the superior court issued an initial pretrial order requiring the parties to jointly submit a list of three potential trial dates. The pretrial order noted that initial disclosures by the parties should be made within 30 days. Three days after that order, Chippewa filed for a protective order staying the initial pretrial order. Chippewa argued there was no need for discovery because the factual issues had been resolved by the settlement agreement. Chippewa also filed an opposition to McCormick's summary judgment motion. Chippewa pointed to the "undisputed facts" establishing that the policy limit referred to in the settlement agreement was $500,000. Chippewa also contended there was no legal basis for McCormick to argue for an interpretation that "policy limit" meant $1.5 million because the $500,000 amount was identified in the settlement agreement McCormick signed.

McCormick replied to Chippewa's protective order motion, arguing that the settlement agreement "did not set forth an express figure" and that "[t]his is not remotely a case in which those facts have previously been adjudicated." McCormick also raised the "potential need under [Rule] 56(f)" to secure additional discovery.[2] The superior court took no action on Chippewa's protective order motion.

---

[2]    Alaska R. Civ. P. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition [to summary judgment], the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Later in April McCormick filed a status report regarding the pretrial order. McCormick complained that Chippewa had failed to respond to the second interrogatories and had failed to exchange initial disclosures, noting that Chippewa's pending motion for a protective order did not automatically stay the pretrial order. McCormick also filed a motion to compel Chippewa to respond to the second interrogatories. McCormick's motion noted that he should have the option to "press forward with depositions" after the required pretrial disclosures had been made.

Chippewa opposed McCormick's motion to compel, reiterating its belief that discovery was not warranted because the settlement agreement should be enforced: "It is appropriate to preclude discovery where it is irrelevant to the cause of action . . . . [McCormick] agrees with [Chippewa] that the case has settled." But McCormick responded that Chippewa's assertion it believed the settlement was for $500,000 raised a question of "state of mind" and a genuine issue of fact, entitling McCormick to discovery. McCormick concluded that he "still has the right to insist on [Chippewa's] answers to the interrogatories attached to his initial motion . . . as they are necessary to issues this court must resolve."

Without ruling on McCormick's motion to compel discovery, in July 2012 the superior court converted Chippewa's motion to dismiss into a motion for summary judgment. Both parties submitted new briefs arguing their cross-motions for summary judgment.

### C. McCormick's Motions For Pre-trial Conference And Continuance

In August McCormick filed a motion for a pretrial conference regarding discovery of Chippewa's state of mind during the settlement negotiations. McCormick's motion sought court permission to conduct discovery "of defendants, their attorneys, their underwriters, underwriters' attorneys ('coverage counsel'), adjusters and agents [as to] state of mind on various issues." According to McCormick, Chippewa "raised the

affirmative defense of 'mistake' . . . putting in issue their 'intent' at the time [of] their settlement." McCormick also sent Chippewa a third set of interrogatories, but the record does not indicate any response from Chippewa.

Chippewa opposed McCormick's motions for a pretrial conference and summary judgment. Chippewa again argued that its underlying motion was to enforce the settlement agreement and "[r]esolution of this motion does not require discovery or a pretrial order." Chippewa submitted an affidavit from its attorney stating that "[n]ever did [McCormick's] counsel mention that he thought the limits were $1.5 million" — i.e., three policy limits — and that Chippewa's attorney had followed up with McCormick's attorney after the March 21 telephone call to resolve any confusion over the policy limits to be paid. Thus, according to Chippewa, the settlement was for a single policy limit and discovery was not needed.

McCormick replied to Chippewa's discovery opposition, arguing that if the superior court were to use Chippewa's lawyer's affidavit to determine the summary judgment motion, then discovery into the lawyer's state of mind would be necessary. He contended discovery of Chippewa's lawyer's, its clients', and its underwriters' "contemporaneously created communications and files and depositions" was warranted "to see if they corroborate [Chippewa's lawyer's] testimony in her affidavit before [McCormick] is forced to put his own attorney's testimony . . . in evidence." McCormick also filed a motion for a Rule 56(f) continuance to engage in discovery of Chippewa's lawyer's state of mind.

The superior court denied McCormick's Rule 56(f) motion. The court stated that McCormick's lawyer had not submitted an affidavit explaining why additional time for discovery was needed, and that the "court is not convinced that additional time is needed. Counsel has pointed to no particular issue that requires additional discovery prior to ruling on [Chippewa's] summary judgment motion."

McCormick moved for reconsideration of the denial of his Rule 56(f) motion. McCormick argued that the superior court erred by not considering controlling case law holding that a Rule 56(f) movant does not need to state "specific facts" to be gained by further discovery. But McCormick also submitted an affidavit from his lawyer "in support of [a Rule] 56(f) continuance to obtain evidence" in response to Chippewa's lawyer's affidavit. The affidavit described McCormick's lawyer's version of the settlement negotiations and disputed the facts set forth in Chippewa's lawyer's affidavit. McCormick's lawyer contended that Chippewa knew McCormick claimed a settlement for "more than one accident or occurrence" but went ahead with the settlement. McCormick's reconsideration motion concluded by asking the superior court for more time to conduct "an inspection [of Chippewa] and their counsel, adjuster and underwriters files." According to McCormick, discovery would lead to evidence "showing their state of mind with regard to the 'per occurrence' coverage and other coverage available under their policy at issue."

### D.    Superior Court Decision

During oral argument on the summary judgment motions, McCormick's lawyer restated his requests for discovery: "[Chippewa] filed their motion for summary judgment initially in this case. And what would have normally happened had they not filed that motion, there would have been a pre-trial order issued and there would have been some discovery happening in the meantime." Chippewa countered that there was no need for discovery because the case had already been settled.

In January 2013 the superior court issued three orders. First, the superior court granted Chippewa's motion for enforcement of the settlement agreement as Chippewa interpreted it. The court concluded that the settlement agreement "was sufficiently definite and encompassed all of the essential terms necessary to constitute an offer." Because the settlement agreement referred to a policy limit of $500,000, the

court held that there may have been questions about the amount remaining, but by signing the agreement McCormick "clearly agreed to $500,000," plus attorney's fees and minus allowable expenses. Thus, McCormick's signature on the agreement indicated an objective intent to be bound by those terms and Chippewa had "fully satisfied their obligation under the Settlement Agreement" by tendering the settlement checks. Second, the court granted Chippewa's motion for summary judgment on McCormick's claims. Third, the court denied McCormick's pending discovery motions as moot.

McCormick now appeals.

## III.   DISCUSSION

McCormick argues it was error to grant summary judgment because he was denied the opportunity to conduct discovery into the intent of Chippewa and its lawyer during the settlement negotiations. According to McCormick, he should be allowed the opportunity to discover evidence "showing [Chippewa's lawyer's] state of mind with regard to the 'per occurrence' coverage." McCormick contends that by ruling the Rule 56(f) motion moot, and effectively denying discovery, the superior court abused its discretion.[3] We agree.

It is well settled that litigants in civil cases have a "right to discovery"[4] — to investigate their opponent's claims and gather evidence to support their own assertions. Rule 26 provides that "[p]arties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim

---

[3]     We review the denial of a Rule 56(f) motion for abuse of discretion. *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 757 (Alaska 2008).

[4]     *Noffke v. Perez*, 178 P.3d 1141, 1150 (Alaska 2008) (quoting *Marron v. Stromstad*, 123 P.3d 992, 999 (Alaska 2005)).

or defense of any other party."[5] "It is not necessary that the information actually be admissible at trial, only that the information sought might reasonably lead to the discovery of admissible evidence."[6] We have said that "discovery rules are to be broadly construed,"[7] in order to uphold "a system of liberal pretrial discovery."[8]

The opportunity to discover facts relevant to an opponent's claims and defenses is especially important at the summary judgment stage. Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."[9] The Alaska Civil Rules recognize that when faced with a summary judgment motion, a party might require more time to discover facts that counter the moving party's assertions; Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons state present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

As we have explained, "[t]he purpose of [Rule 56(f)] is to provide an additional safeguard against an improvident or premature grant of summary judgment."[10]

---

[5]      Alaska R. Civ. P. 26(b)(1).

[6]      *Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004).

[7]      *Lockwood v. Geico Gen. Ins. Co.*, 323 P.3d 691, 699 (Alaska 2014) (quoting *Lee v. State*, 141 P.3d 342, 347 (Alaska 2006)).

[8]      *Jones v. Jennings*, 788 P.2d 732, 735 (Alaska 1990).

[9]      Alaska R. Civ. P. 56(c).

[10]      *Munn v. Bristol Bay Hous. Auth.*, 777 P.2d 188, 193 (Alaska 1989) (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL (continued...)

In accordance with our system of liberal pretrial discovery, we have made it clear that Rule 56(f) motions normally should be granted: "[A]s long as a non-movant [for summary judgment] has not been dilatory and has 'made clear to the trial court and the opposing party that he' is requesting a Rule 56(f) continuance, the request 'should be freely granted.' "[11] And the prerequisites for granting a Rule 56(f) motion are not onerous: the movant does not need to "state what specific facts further discovery will produce" or provide an affidavit in support of the motion.[12] "The request will generally be granted if the party provides adequate reasons explaining why the party cannot produce facts necessary to oppose summary judgment within the original time frame."[13]

Here, the parties' positions suggested at least the three following scenarios: (1) both McCormick's lawyer and Chippewa's lawyer understood the settlement agreement was for a single policy limit of $500,000 regardless of the number of injury occurrences; (2) both lawyers understood the settlement agreement was for "policy limits," leaving open for later resolution how many occurrences and single policy limits were at issue; or (3) there was no meeting of the minds regarding the interplay between

---

[10]    (...continued)
PRACTICE AND PROCEDURE § 2740, at 530-32 (2d ed. 1983)).

[11]    *Id*. (quoting *Jennings v. State*, 788 P.2d 1304, 1313-14 (Alaska 1977)).

[12]    *Id*. ("[W]e see no compelling reason to interpret Rule 56(f) to require that non-moving opposing parties state what specific facts discovery will produce."); *Kessey v. Frontier Lodge, Inc*., 42 P.3d 1060, 1063 (Alaska 2002) (declining to require an affidavit in support of a Rule 56(f) motion).

[13]    *Gamble v. Northstore P'ship*, 907 P.2d 477, 485 (Alaska 1995); *see also Mitchell v. Teck Cominco Alaska, Inc*., 193 P.3d 751, 758 (Alaska 2008) ("[T]o receive a continuance [under Rule 56(f)] a party (1) must unambiguously request relief on Rule 56(f) grounds . . . (2) must not have been dilatory during discovery; and (3) must provide adequate reasons why additional time is needed.").

occurrences and policy limits, and therefore there was no settlement at all. McCormick consistently sought discovery of facts relevant to Chippewa's assertion that the settlement agreement was for a single policy limit of $500,000.

McCormick's filings made clear that he was asking for a Rule 56(f) continuance, the reasons for his request, and the type of discovery he sought to obtain. McCormick's first mention of Rule 56(f) occurred as part of his opposition to Chippewa's motion for a protective order. McCormick explicitly stated that he "invoke[d] the potential need under [Rule] 56(f) to secure evidence in support" of his positions. McCormick later replied to Chippewa's opposition to McCormick's motion for a pretrial conference, pointing out that "Plaintiff's . . . total inability to conduct discovery of defendant[']s agent[']s actual state of mind compels denial of defendant[']s [summary judgment motion] pending Plaintiff's [Rule] 56(f) opportunity to conduct discovery" (emphasis omitted). After the superior court denied McCormick's Rule 56(f) motion, McCormick moved for reconsideration, reiterating his desire to conduct discovery of Chippewa's "counsel, their adjusters, and their underwriters." McCormick submitted his lawyer's affidavit describing the type of information sought: "Specifically . . . copies of written communications between [Chippewa's lawyer and the insurance adjusters], as well as notes of oral communications between them and with Plaintiff's counsel showing their state of mind with regard to the 'per occurrence' coverage." McCormick clearly sought a continuance to conduct discovery into Chippewa's intent regarding the settlement agreement. Such discovery is particularly important considering that McCormick was not given an opportunity to depose Chippewa's lawyer even though Chippewa used its lawyer's affidavit to establish its intent and what it alleged was McCormick's understanding of that intent.

It is also clear that McCormick was not dilatory in seeking discovery and required additional time to gather new facts. McCormick sent three sets of interrogatories to Chippewa requesting information about Chippewa's claims and defenses. Chippewa failed to provide meaningful responses to the first interrogatories and did not respond at all to the second and third interrogatories. The superior court never ruled on McCormick's motion to compel Chippewa to respond to those interrogatories.

Based on the foregoing, we conclude that it was an abuse of discretion to deny McCormick's Rule 56(f) motion before ruling on summary judgment.

## IV. CONCLUSION

We VACATE the superior court's grant of summary judgment and REMAND for further proceedings consistent with this opinion.[14]

---

[14] On remand, the superior court will have the opportunity to consider McCormick's discovery requests, including allowing Olsen's and McCormick's depositions, which may be appropriate for at least two reasons: (1) testimony about the underlying accident(s) and the relative nature of the injury(ies) may provide context for the dispute, i.e., whether each alleged injury could give rise to a reasonable expectation of a policy limit recovery; and (2) in light of the possibility that the putative settlement agreement is unenforceable, the testimony of the apparently elderly men may be a safeguard to preserve evidence of the events of August 14 through 16, 2007.