*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| BRENT McCORMICK, | ) |
| | ) Supreme Court No. S-16619 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-11-12131 CI |
| v. | ) |
| | ) O P I N I O N |
| CHIPPEWA, INC. and LOUIS | ) |
| OLSEN, | ) No. 7435 – March 20, 2020 |
| | ) |
| Appellees. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: Gerald W. Markham, Kodiak, for Appellant. Laura L. Farley, Farley & Graves, P.C., Anchorage, for Appellees.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

BOLGER, Chief Justice.
STOWERS, Justice, dissenting.

## I. INTRODUCTION

An injured seaman initiated settlement negotiations with his employer's insurance company for "policy limits." Under the insurance policy there was a per-occurrence coverage limit. During negotiations, counsel for the seaman and the insurance company discussed the terms of the settlement over a phone call; they provide

inconsistent accounts of which issues were addressed on the call. The seaman's counsel's affidavit asserts that he raised the issue of the number of occurrences and the parties agreed to leave it unresolved. However, the insurance company's counsel offers conflicting testimony, alleging that the parties did not discuss the number of occurrences during the phone call.

Shortly after this phone call, the seaman and the insurance company reached a purported settlement agreement. The seaman filed suit to enforce the purported settlement agreement for policy limits based on three occurrences. The insurance company filed for summary judgment, asserting that the agreement was for policy limits of a single occurrence. The superior court granted summary judgment for the insurance company, concluding that its interpretation of the purported settlement agreement was correct.

The seaman argues that the superior court abused its discretion on evidentiary and discovery issues and erred by granting the insurer's motion for summary judgment. We identify no abuse of discretion. But there is an issue of fact barring summary judgment due to the contradictory accounts of the phone call. A reasonable person could discern a genuine factual dispute on a material issue because this phone call could either (1) provide extrinsic evidence of the meaning of the settlement agreement, or (2) indicate that there was no meeting of the minds on an essential term, and thus no enforceable agreement was formed. We therefore conclude that summary judgment was inappropriate.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In August 2007 Brent McCormick was injured while working aboard

F/V CHIPPEWA, owned by Chippewa, Inc.[1]  McCormick filed a lawsuit against Chippewa and Louis Olsen, the vessel's captain, in August 2010.[2]

In January 2011 McCormick began settlement negotiations with Chippewa.[3]  Chippewa had an insurance policy with a $500,000 per-occurrence limit, from which the "[c]osts and expenses . . . of investigating and/or defending any claim" would be deducted.  McCormick's attorney, Gerald Markham, sent Chippewa an offer to settle the lawsuit "for any and all injuries occurring or arising out of Mr. McCormick's 2007 employment on the F/V CHIPPEWA . . . in exchange for the 'policy limits' " of Chippewa's insurance policy.  This settlement offer described two accidents McCormick suffered during this time.  Chippewa responded, accepting McCormick's "demand for payment of the remaining policy limits."  Chippewa indicated that the policy had a face limit of $500,000, of which approximately $370,000 remained.

In March 2011 Markham called Chippewa's attorney, Laura Farley, to discuss the settlement.  The following day he sent Chippewa a letter "to follow up on [their] conversation of yesterday wherein [he] indicated to [Chippewa] that [he] viewed the policy limits in the . . . policy to be different than [the prior] estimate."  Markham suggested, though, that Farley stated that it was the insurer's "intention . . . in accepting [McCormick's] 'policy limits' offer to pay 'limits' what ever they may be."  McCormick

---

[1]     *McCormick v. Chippewa, Inc.*, (*McCormick I*), 330 P.3d 345, 347 (Alaska 2014). As both the present case and *McCormick I* were appealed following a motion for summary judgment, we describe the facts in the light most favorable to McCormick, the non-moving party, and assume them to be true.  *See Leahy v. Conant*, 436 P.3d 1039, 1043 (Alaska 2019).

[2]     *McCormick I*, 330 P.3d at 347.  We refer to both Chippewa and Olsen collectively as "Chippewa."

[3]     *Id*.

attached a signed settlement agreement, releasing Chippewa from liability "in consideration of the remaining policy limits available." McCormick then dismissed his lawsuit.

In April Chippewa sent McCormick a letter identifying the initial policy limit, the expenses Chippewa had accrued, and the remaining policy limit of $424,040.05 after expenses, which would be paid to McCormick. McCormick did not respond to this letter.

**B.      Proceedings In *McCormick I***

In November 2011 McCormick filed a new lawsuit, seeking enforcement of the purported settlement agreement. In a cross-motion for partial summary judgment, McCormick clarified that he believed there had been three "occurrences" under the policy, which would triple the available policy limits. Chippewa filed its own motion for enforcement of the settlement based on the prior calculations for a single policy limit. The superior court converted Chippewa's motion to a motion for summary judgment. McCormick requested an Alaska Civil Rule 56(f) continuance to allow further discovery into Chippewa's intent regarding the settlement agreement.[4] The court did not grant McCormick's requested Rule 56(f) continuance. Instead, it granted Chippewa's motion for summary judgment, concluding that the parties agreed to settle for only a single policy limit.

---

[4]      Rule 56(f) allows a court to "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" when a party opposing a motion for summary judgment cannot "present by affidavit facts essential to justify the party's opposition."

McCormick appealed and we concluded that the superior court abused its discretion by denying McCormick's Rule 56(f) motion.[5] We remanded so that "the superior court [would] have the opportunity to consider McCormick's discovery requests."[6]

### C.    Proceedings Following *McCormick I*

Following this court's remand, Chippewa provided McCormick with Alaska Civil Rule 26(a)(1) disclosures. These disclosures included Chippewa's correspondence with counsel on the case between December 2010 and November 2011, when McCormick filed the present lawsuit. Chippewa then filed a motion for summary judgment, arguing that it never intended the settlement to involve multiple policy limits. Several months later McCormick filed a motion to compel discovery based on discovery requests he filed in 2012.

In October 2015 the superior court held a discovery hearing, in part to be "absolutely clear what it is that's being requested." McCormick maintained that he should have access to documents created after the lawsuit was filed in November 2011. Following this hearing the superior court denied McCormick's motion to compel discovery. The court noted that Chippewa had provided McCormick with documents "from the day the case was assigned to Chippewa's counsel until eight months after settlement," and found that this disclosure was sufficient.

In December 2015 Chippewa learned that McCormick had hired an attorney to serve as an expert witness on insurance claim processing. Chippewa filed a motion

---

[5]     *McCormick I*, 330 P.3d at 351-52.

[6]     *Id*. at 352 n.14.

to exclude this expert testimony and report, and in June 2016 the superior court granted Chippewa's motion.

The superior court issued an order granting Chippewa's motion for summary judgment in December 2016. It concluded that the parties had entered into a binding settlement agreement, and noted that "[t]he only outstanding issue is how to interpret that agreement as to the phrase 'remaining policy limits.' "

The court concluded that "remaining policy limits" referred to the remainder of a single limit of $500,000, not the sum of multiple occurrences that each have a $500,000 limit. The court reached this conclusion because the settlement applied "to all claims, arising out of incidents on the F/V CHIPPEWA, . . . in exchange for the 'remaining policy limits' of the $500,000 insurance policy." It also relied on extrinsic evidence, including Chippewa's attorney's exposure analysis letter, which the court viewed as "demonstrat[ing] that Chippewa was not considering exposure above $500,000." The court additionally noted that McCormick's settlement offer did not state that multiple occurrences might be involved. Finally the court recognized that Chippewa's acceptance letter included an estimate of the remaining policy limits that was below $500,000.

The court concluded that a second basis for upholding Chippewa's interpretation of the settlement agreement was that McCormick had ratified this interpretation. According to the court, McCormick demonstrated his intent to abide by Chippewa's interpretation of "remaining policy limits" by failing to timely object to Chippewa's March 2011 estimate of the remaining policy limit, and then subsequently signing the settlement agreement and dismissing his lawsuit.

In March and April of 2017 the superior court awarded Alaska Civil Rule 82 attorney's fees to Chippewa. McCormick appeals.

## III. DISCUSSION

McCormick argues that the superior court abused its discretion when it denied his motion to compel discovery and granted Chippewa's motion excluding his expert witness testimony and report. He additionally argues that the parties agreed to a settlement that would obligate Chippewa to pay multiple policy limits. Thus, he contends that the superior court's conclusion that the parties agreed to a single policy limit settlement is erroneous. He also asserts that the superior court applied the incorrect standard when assessing attorney's fees. Finally, he attempts to incorporate several arguments by reference to briefing in a prior case.

While we find no abuse of discretion in the superior court's treatment of the motion to compel and motion to exclude, we conclude that the superior court overlooked the existence of a factual dispute that would preclude summary judgment on either of the bases used to uphold Chippewa's interpretation of the settlement agreement. We therefore remand for further proceedings. We decline to address McCormick's other arguments because they were waived.

### A. The Superior Court Did Not Abuse Its Discretion By Denying McCormick's Motion To Compel.

McCormick argues that the superior court abused its discretion by not compelling Chippewa to disclose its documents created after November 2011.[7] Reviewing the entirety of the record, we cannot say the superior court abused its

---

[7]    McCormick suggests that the superior court failed to follow our mandate in *McCormick I* to allow him to conduct discovery. *See id*. at 351-52. He also suggests that the superior court abused its discretion by failing to allow an *in camera* inspection of the documents generated after November 2011. McCormick's contention is, at its core, a concern about the superior court's denial of the motion to compel, and we therefore address that concern directly.

discretion by denying this discovery request.[8]  McCormick began negotiating a settlement with Chippewa in February 2011.  The parties came to a purported agreement in March 2011, and in April Chippewa provided a calculation of what it believed to be the remaining policy limit.

Although we have stated that "[d]iscovery rules are to be liberally construed,"[9] we cannot say it was manifestly unreasonable for the superior court to limit discovery here.  To "give effect to the intent behind the agreement," we have instructed the superior court to consider "the surrounding circumstances *at the time the contract was negotiated.*"[10] Chippewa voluntarily disclosed its insurance company's internal file, its adjuster's file, and all communications related to the negotiations generated between December 2010 and November 2011.  This time period encompasses the negotiations between McCormick and Chippewa, as well as a full eight months after the parties purportedly agreed to settle for the "remaining policy limits."  We cannot find that the superior court abused its discretion by limiting discovery to documents created surrounding the settlement negotiations.

---

[8]     "We review a trial court's discovery rulings . . . for abuse of discretion." *Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 878 (Alaska 2013) (citing *Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004)).  "A superior court abuses its discretion 'when the decision on review is manifestly unreasonable.' " *Lingley v. Alaska Airlines, Inc.*, 373 P.3d 506, 511 (Alaska 2016) (quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015)).

[9]     *Olivera v. Rude-Olivera*, 411 P.3d 587, 591 (Alaska 2018) (citing *Douglas v. Glacier State Tel. Co.*, 615 P.2d 580, 593 (Alaska 1980)).

[10]     *Peterson v. Wirum*, 625 P.2d 866, 870, 870 n.7 (Alaska 1981) (emphasis added) (second quotation quoting *Pepsi Cola Bottling Co. v. New Hampshire Ins. Co.*, 407 P.2d 1009, 1013 (Alaska 1965)).

**B. The Superior Court Did Not Abuse Its Discretion By Excluding McCormick's Expert Witness Testimony And Report.**

McCormick attempted to introduce the expert witness testimony and report of an attorney to support his claim that Chippewa must have known that the settlement was for multiple occurrences. McCormick argues that the superior court's exclusion of this testimony and report was premature as he "was only offering it in support" of his attempts to further expand discovery.[11]

But McCormick's interpretation of the superior court's exclusion order is too broad. Chippewa's motion sought only to prevent the testimony and report from being "considered by [the superior court] in opposition to Chippewa's motion for summary judgment" or "admitted at trial." Its motion did not address the possibility that the testimony would relate to discovery. Read in context the superior court's order only prohibited McCormick from admitting the testimony or proffering the report of his expert witness in opposition to Chippewa's motion for summary judgment. Therefore, McCormick's argument that the superior court's order was errantly issued is mistaken and we cannot otherwise say that the superior court abused its discretion.

**C. Chippewa Was Not Entitled To Summary Judgment Because A Genuine Issue of Material Fact Exists.**

"[T]he only questions to be answered at the summary judgment stage are whether a reasonable person could believe the non-moving party's assertions and whether a reasonable person could conclude those assertions create a genuine dispute as to a material fact."[12] Summary judgment is thus inappropriate if a reasonable person

---

[11]     We review the admission or exclusion of evidence for abuse of discretion. *State v. Sharpe*, 435 P.3d 887, 892 (Alaska 2019).

[12]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014).

could discern a genuine factual dispute on a material issue.[13] This "decision is not based on whether the court actually believes the evidence or whether it believes the moving party has better evidence."[14]

Here the superior court erred by granting Chippewa's motion for summary judgment despite such a genuine dispute as to a material fact.[15] The record indicates that the expressed intent of the parties regarding an essential term of the purported settlement agreement is in dispute. The evidence in this case suggests two different factual scenarios.[16] One possibility is that both McCormick's attorney, Markham, and Chippewa's attorney, Farley, understood that the purported settlement agreement was for a single policy limit of $500,000 regardless of the number of injury occurrences.[17] However, a reasonable person could also believe McCormick's assertions that there was no meeting of the minds on a material term — the policy limits — and therefore there is a genuine factual dispute as to whether the parties formed an enforceable settlement agreement.[18]

---

[13]     *Id.*

[14]     *Id.*

[15]     As we explained in *Christensen*, "Summary judgment does not require the non-moving party to prove factual issues according to the applicable evidentiary standard, and does not allow trial judges to predict how a reasonable jury would decide the case. . . ." *Id.* at 519.

[16]     *See McCormick I*, 330 P.3d 345, 352 (Alaska 2014) (discussing plausible factual scenarios that made denying McCormick's Rule 56(f) motion before granting summary judgment an abuse of discretion).

[17]     *Id.*

[18]     *Id.*

Markham submitted an affidavit detailing the March 2011 phone call between the parties' attorneys during the negotiations. According to this affidavit, he mentioned his belief that there was more than one occurrence, but the attorneys agreed to settle while leaving the number of occurrences unresolved.[19] This account could be supported by Markham's letter following up on the phone conversation, in which he noted that the policy limits might be different than the initial estimates and that it was his understanding that the insurance company would "pay 'limits' what ever they may be." In light of this account, when McCormick signed the purported settlement agreement and dismissed his first lawsuit it could have been with the understanding that they had not yet decided on the limits.

Under the scenario suggested by Markham's affidavit, the parties signed the purported settlement agreement without agreeing on policy limits, and therefore did not have a meeting of the minds on a material term.[20] In addition to barring summary

---

[19] The settlement letter from Markham demanding policy limits at the start of the negotiation process could provide additional support for the proposition that the number of occurrences was raised yet unresolved, as the letter stated that the settlement was "for any and all injuries" and the "claim arises from two accidents to McCormick."

[20] We discussed such a situation in *Davis v. Dykman*, which involved a car accident victim's purported settlement agreement with the insurance company. 938 P.2d 1002 (1997). In *Davis* we affirmed the superior court's holding that the parties had not formed an enforceable agreement when the settlement offer "did not propose a specific amount or a method of calculating a specific amount." *Id.* at 1006. The formation of a valid contract requires an offer encompassing all essential terms, and, in the case of a settlement agreement, this includes a dollar amount that the party would accept or the method used to calculate such an amount. *Id.* at 1006-07 (citing *Young v. Hobbs*, 916 P.2d 485, 488 (Alaska 1996) (concluding parties to purported settlement agreement did not agree on a material issue)). A contract to negotiate the settlement amount is unenforceable. *See id.* at 1008-09 ("Without agreeing on a more specific way of resolving their differences, any agreement to negotiate would have been too indefinite (continued...)

judgment on the basis that the parties agreed to settle for a single policy limit, this dispute also creates an issue of fact barring summary judgment on the superior court's second basis for upholding Chippewa's interpretation of the settlement agreement: McCormick ratified Chippewa's interpretation by failing to object to its interpretation that there was one occurrence, and subsequently signing the settlement agreement and dismissing his lawsuit. If the attorneys agreed to leave the number of occurrences open during the phone call, then McCormick's actions may not demonstrate his intent to abide by Chippewa's interpretation of "remaining policy limits."

Markham's account is contradicted by an affidavit and deposition of Farley, which assert that the parties never mentioned the number of occurrences during the call. The dissent asserts that it is clear the parties did not reach an agreement on the number of policy limits in play; however, a reasonable person could believe that Farley's account of the phone call is more credible. Farley's account of the call suggests that the parties agreed to settle for a single $500,000 policy limit.

The settlement agreement and extrinsic evidence could also support that the parties agreed to settle for a single policy limit. Markham's settlement offer explained that "[t]his letter is written to extend an offer to unconditionally settle all aspects of all claims . . . in exchange for the 'policy limits.' " In this settlement offer Markham did not state that McCormick was seeking policy limits based on multiple occurrences, rather he noted that "this claim," as in a singular claim, "arises from two accidents to McCormick." Chippewa's acceptance letter then included an "estimate that the remaining limits are approximately $370,000": this amount is consistent with an understanding that the settlement was for a single occurrence.

---

[20]      (...continued)
to enforce.").

Before reaching the purported settlement agreement, Farley sent an exposure analysis letter to the insurance underwriter which indicated an "estimate [that] the remaining policy limits are slightly less than $400,000." And as discussed by the superior court, the settlement agreement was written to apply to "the injuries . . . suffered as a result of the accident aboard the F/V CHIPPEWA on or about August 14, 15, 16, 2007 and/or as a result of [McCormick's] employment with Chippewa, Inc." in exchange for "the remaining policy limits available under [the policy with a] face limit of Five Hundred Thousand Dollars."

Given the interplay between the number of occurrences and policy limits, the conflicting evidence about the phone call presents a genuine issue of material fact:[21] A reasonable person could discern that there is a factual dispute about whether the parties quantified the policy limits or set out a procedure for determining policy limits. Whether the attorneys expressed their intentions during the phone call and, if so, what those

---

[21] *See Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1281-82 (Alaska 1985) (holding that interpretation of ambiguous letters "depends on knowledge of surrounding circumstances, i.e., what was said at the previous meetings between Zeman and Lufthansa's representatives . . . . [and] presents a question of fact which should not have been resolved in a motion for summary judgment."). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 212 cmt. e (AM. LAW INST. 1981) ("Even though an agreement is not integrated, or even though the meaning of an integrated agreement depends on extrinsic evidence, a question of interpretation is not left to the trier of fact where the evidence is so clear that no reasonable person would determine the issue in any way but one. But if the issue depends on evidence outside the writing, and the possible inferences are conflicting, the choice is for the trier of fact."); 5 MARGARET N. KNIFFIN, CORBIN ON CONTRACTS §24.30, at 332 (1998) ("Both the existence and the terms of a contract must often be established by means of inferences drawn from letters, conduct, and oral statements of the parties . . . . The weighing of this evidence and the determination of the inferences to be drawn — the interpretation — is for the jury or other trier of the facts . . . ." (footnote omitted))).

intentions were should have been left to the trier of fact.[22] The superior court therefore erred when it granted Chippewa's motion for summary judgment, and we remand so that the superior court may allow a trier of fact to determine whether the parties reached an agreement and, if so, what terms they agreed to.[23]

## D.     McCormick Has Waived His Other Arguments.

McCormick attempted to incorporate by reference several other arguments presented in briefing submitted during *McCormick I*.  He argues that we may take judicial notice of the prior briefing.  But we have long held that a party's briefing must contain its own arguments and may not merely incorporate arguments from other documents.[24]  Our Rules of Appellate Procedure require each brief to contain "the

---

[22]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014) ("The trier of fact ultimately may find against the non-moving party after evaluating credibility and applying the substantive evidentiary standards of proof at trial.").

[23]     *See Alaska N. Dev. Inc. v. Alyeska Pipeline Serv. Co.*, 666 P.2d 33, 39 (Alaska 1983) ("If the evidence conflicts, the choice between competing inferences is for the trier of fact to resolve."); *Peterson v. Wirum*, 625 P.2d 866, 869-70 (Alaska 1981) ("[S]ummary judgment is inappropriate when the affidavits and other evidence before the trial court establish that a factual dispute exists as to the expressed intent of the parties." (citing *Kincaid v. Kingham*, 559 P.2d 1044, 1047 (Alaska 1977))); RESTATEMENT (SECOND) OF CONTRACTS § 215 cmt. b (AM. LAW INST. 1981) ("Where reasonable people could differ as to the credibility of the evidence offered and the evidence if believed could lead a reasonable person to interpret the writing as claimed by the proponent of the evidence, the question of credibility and the choice among reasonable inferences should be treated as questions of fact.").

[24]     *See Blair v. Fed. Ins. Co.,* 433 P.3d 1048, 1053 (Alaska 2018) (declining to consider arguments incorporated into opening brief by reference to summary judgment pleadings in the superior court); *Kay v. Danbar, Inc.*, 132 P.3d 262, 265 n.1 (Alaska 2006) ("Because Kay's brief merely incorporates his superior court arguments on the summary judgment issues, we deem these issues to be inadequately briefed, and we decline to consider them."); *Anchorage Nissan, Inc. v. State*, 941 P.2d 1229, 1240

(continued...)

contentions of the appellant . . . with citations to the authorities, statutes, and parts of the record relied on."[25] Our Appellate Rules also prescribe a strict page limit with limited exceptions.[26] As the Supreme Court of Pennsylvania has noted, allowing incorporation of other briefing "would enable wholesale circumvention of our appellate rules which set forth the fundamental requirements every appellate brief must meet."[27] McCormick may not incorporate arguments by reference to outside documents, but must develop his position in his own brief. We therefore deem these arguments waived due to inadequate briefing.[28]

## IV.    CONCLUSION

We AFFIRM the superior court's discovery and evidentiary rulings. We VACATE the superior court's grant of summary judgment and award of attorney's fees.[29] We REMAND for further proceedings consistent with this opinion.

---

[24]    (...continued)
(Alaska 1997) ("We need not consider arguments which a party on appeal merely adopts and incorporates by reference to its lower court memoranda.").

[25]    Alaska R. App. P. 212(c)(1)(I).

[26]    Alaska R. App. P. 212(c)(4) (limiting opening brief to 50 pages); Alaska R. App. P. 212(c)(5) (allowing appellant or appellee in a case involving multiple parties to "adopt by reference any part of the brief of another").

[27]    *Com v. Briggs*, 12 A.3d 291, 343 (Pa. 2011) (deeming arguments incorporated by reference via brief attached as an appendix to appellant's brief waived).

[28]    *See Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015) ("Where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." (quoting *Glover v. Ranney*, 314 P.3d 535, 545 (Alaska 2013))).

[29]    Because we vacate the superior court's award of attorney fees, we decline to address McCormick's arguments related to those fees.

STOWERS, Justice, dissenting.

McCormick's injury lawsuit was filed in Kodiak in 2010.[1]  In early to mid-January 2011, Chippewa, Inc.'s insurance adjusters dealing with McCormick's attorney, Gerald Markham, were emailing back and forth regarding Markham's method of operation with policy limits demands.  After noting the insurer should be in good shape for a policy limits demand, one stated:  "Sounds like we may even have a 2nd injury, falling out of bunk and injuring his head."

In late January and early February 2011, an adjuster and Chippewa's attorney, Laura Farley, were discussing McCormick's claims by email with the singular "injury" in the subject line.  The adjuster noted that Markham had said on January 24 that a demand letter would be forthcoming.  Farley relayed information from a medical record review doctor, who specifically discussed a potential disc injury and a potential head injury.  The original letter to the doctor from an adjuster had specifically asked if McCormick's alleged dizziness and balance issues could be caused by his "back injury and/or treatment" or if "it is possible for a blow to the head or a head injury" to be the causal agent.

In a February 8 letter, Farley outlined to an adjuster her analysis of the case, discussing both liability and damages; she noted that the reasonable settlement range for the case was $230,000 to $375,000, and she recommended that the insurer attempt negotiations at the best terms possible but said, "be prepared to offer the remaining limits" to protect the insureds.

On February 15 Markham delivered a demand letter to the insurance adjuster offering to settle for policy limits.  In the letter Markham stated that the "claim arises from two accidents to McCormick."  Markham described one accident leading to

---

[1]     *See McCormick v. Chippewa, Inc.*, 330 P.3d 345, 347 (Alaska 2014).

a back injury and alleged related medical malpractice liability, and referred to this as occurring on August 14-15, 2007. He described a second accident as being tossed off of a bunk in heavy seas with a related head injury, and referred to this as occurring on August 15, with medical treatment on August 16. He started the letter by noting the settlement offer was for policy limits and concluded with a demand that the insurer "unconditionally accept this policy limits offer." Markham reiterated his demand for an unconditional acceptance of the policy limits demand by email on February 22, 2011.

In a March 3 letter by fax, Farley advised Markham of her representation of the insureds and stated that she "wr[o]te to accept your demand for payment of the remaining policy limits under" the insurance policy. She noted the policy's face limits were $500,000 and estimated remaining limits of $370,000 given cannibalization of the policy limits. She attached a settlement agreement and release. She said that "the underwriters will calculate the remaining limits" after the settlement papers were finalized and that a check would be exchanged for the settlement papers.

The settlement agreement stated as consideration for McCormick's release "the remaining policy limits available" under the insurance policy, which was stated to have $500,000 face limits. Nothing in the settlement agreement stated an estimate of remaining policy limits or how they would be calculated. The release language encompassed "all accidents and incidents" related to McCormick's work on the vessel, "including but not limited to those occurring on or about August 14, 15, and/or 16, 2007."

Markham called Farley to discuss the settlement agreement on March 21. According to Markham's affidavit, he told Farley that he had no problem with the form of the settlement agreement and release, but he also told Farley that he wanted to make clear that he disagreed with Farley's estimate of the remaining policy limits set out in her letter. Markham began to argue that, as set out in his settlement letter, there were

multiple accidents, but was interrupted mid-sentence. Farley responded that (1) she did not want to talk about coverage issues but had been authorized to accept the settlement demand "for policy limits what ever they may be" and (2) it was the insurer's "intention to then pay those limits what ever they may be to get their insureds out of the claims." (Emphasis removed.) Farley said that after the policy limits settlement was reached, Markham could take up with the insurer the issue of what the policy limits actually were. Markham agreed to the concept that McCormick was settling for policy limits, whatever they may be, and Markham would send Farley a confirming fax.

On March 22 Markham sent a confirmation letter by fax. He stated that in the conversation the day before he had expressed his view that policy limits were different than set out in Farley's March 3 letter and that Farley had responded that her intent in accepting his policy limits settlement offer was to effectuate a settlement under which the insurer would "pay 'limits' what ever they may be (which was as my offer's intent)." He then transmitted the signed settlement agreement and release.

On March 24 Markham sent Farley a letter noting he had filed dismissal papers to end the lawsuit. He said he was still awaiting communication regarding how the insurer would be calculating policy limits.

On March 25 Farley sent the insurer an email stating that Markham had "demanded limits, whatever those are, and we accepted by saying we would pay limits, whatever those are."

Markham ultimately refused to accept what the insurer calculated as the remaining, single-occurrence policy limits to consummate the settlement, and he filed the current suit to enforce the settlement agreement.

As more fully discussed in the main opinion, Chippewa eventually filed a motion for summary judgment, arguing that it never intended the settlement to involve multiple policy limits. The superior court issued an order granting Chippewa's motion

for summary judgment in December 2016. It concluded that the parties had entered into a binding settlement agreement and "[t]he only outstanding issue is how to interpret that agreement as to the phrase 'remaining policy limits.' "

The court concluded that "remaining policy limits" referred to the remainder of a single limit of $500,000, not the sum of multiple occurrences that each have a $500,000 limit. The court reached this conclusion because the settlement "appl[ied] to all claims, arising out of incidents on the F/V CHIPPEWA, . . . in exchange for the 'remaining policy limits' of the $500,000 insurance policy." The court also relied on extrinsic evidence, including Chippewa's attorney's exposure analysis letter, which the court viewed as "demonstrat[ing] that Chippewa was not considering exposure above $500,000." The court additionally noted that McCormick's settlement offer did not state that multiple occurrences might be involved. Finally the court recognized that Chippewa's acceptance letter included an estimate of the remaining policy limits that was below $500,000.

The court concluded that a second basis for upholding Chippewa's interpretation of the settlement agreement was that McCormick had ratified this interpretation. According to the court, McCormick demonstrated his intent to abide by Chippewa's interpretation of "remaining policy limits" by failing to timely object to Chippewa's March 2011 estimate of the remaining policy limit, and then subsequently signing the settlement agreement and dismissing his lawsuit.

On appeal, this court reverses the superior court's summary judgment order, holding that genuine issues of material fact preclude summary judgment both on the question whether the parties actually reached an enforceable agreement and, if so, what terms the parties agreed to. My disagreement with the court's opinion is that on the record before us it is clear the parties did not reach an agreement on essential terms of the settlement agreement — the number of policy limits in play and the amount of the

-19-                                                                                    7435

settlement. I would reverse the superior court's grant of summary judgment and remand, not for a trial on these questions, but to allow McCormick to reinstate his personal injury case.

My conclusion is informed by *Davis v. Dykman*.[2] Under *Davis*, if the parties actually agreed to a policy limits settlement — whatever those limits might be — without a mechanism to determine policy limits, the agreement is unenforceable. This is especially true where there is an undetermined number of occurrences that might trigger separate policy limits.

In *Davis* the insurer offered to settle Dykman's tort claims for the policy's face limits plus interest and Alaska Civil Rule 82 attorney's fees based on the face limits.[3] Dykman rejected the offer, arguing that the policy's limitation to Rule 82 attorney's fees on the face limits was unenforceable and that the insurer likely was liable for unlimited Rule 82 attorney's fees.[4] Dykman counteroffered to settle for the face limits plus Rule 82 attorney's fees based on an anticipated jury verdict.[5] The insurer "accepted" this counteroffer, with some different language, agreeing to pay Rule 82 attorney's fees based "on a projected jury verdict as ordered by a court" or negotiated.[6] Dykman denied that the insurer had validly accepted his counteroffer, but rather had sent a new counteroffer; stating that he had no wish to continue litigation, Dykman again offered to settle for face limits plus Rule 82 attorney's fees based "on a projected

---

[2] 938 P.2d 1002 (Alaska 1997).

[3] *Id.* at 1004.

[4] *Id.*

[5] *Id.* at 1005.

[6] *Id.*

verdict."[7]  The insurer responded that it believed the parties had reached an agreement for the policy's face limits plus a Rule 82 figure to be negotiated.[8]

The insurer filed suit seeking specific performance of the alleged settlement agreement.[9]  The superior court granted summary judgment to Dykman, concluding that no enforceable settlement agreement had been reached.[10]  We affirmed.[11]

We first explained that we use our independent judgment in interpreting the undisputed words of an offer to enter into a contract.[12]  Applying our independent judgment "[w]e conclud[ed] that there was no valid offer to settle, because Dykman did not propose a specific amount or a method of calculating a specific amount.  At most, Dykman simply offered to negotiate."[13]  We then discussed the law regarding the need for reasonable certainty in the terms of a proposed contract; absent an offer encompassing the essential terms of the agreement, there could be no contract.[14]  We explained:  "The formation of a valid contract requires *an offer encompassing all essential terms*, unequivocal acceptance by the offeree, consideration, and an intent to

---

[7]     *Id.*

[8]     *Id.*

[9]     *Id.*

[10]    *Id.* at 1006.

[11]    *Id.* at 1009.

[12]    *Id.* at 1006.

[13]    *Id.*

[14]    *Id.* at 1006-07.

be bound. An agreement is unenforceable if its terms are not reasonably certain."[15] We also stated that a contract to negotiate is unenforceable.[16]

In my view, *Davis* compels the conclusion in the case now before us that when the parties agreed to settle for remaining "policy limits what ever they may be," there was no meeting of the minds on an essential term — the amount of the remaining limits — and thus no enforceable agreement was formed. There was also no agreement on the number of incidents and thus the number of policy limits at issue. Farley's proposal that, after McCormick's signing of the settlement agreement and release, Markham could take up with the insurer the issues of what the remaining limits were, simply highlights that the parties had not agreed on this essential element of their contract. To the extent that the parties anticipated and agreed to a later negotiation of what policy limits were in play, the offer and acceptance were also not valid. Either way, as a matter of law the policy limits offer and acceptance were invalid for lack of certainty.

Therefore, summary judgment was improperly granted on the basis of an enforceable agreement. I would hold that an enforceable agreement was not reached, reverse the grant of summary judgment, and remand with instructions to allow McCormick a reasonable time to reinstate his underlying injury claims.

---

[15]     *Id*. at 1006 (emphasis added) (first citing *Young v. Hobbs*, 916 P.2d 485, 488 (Alaska 1996); *Childs v. Kalgin Island Lodge*, 779 P.2d 310, 314 (Alaska 1989); then citing *Hall v. Add-Ventures, Ltd.*, 695 P.2d 1081, 1087-89 (Alaska 1985)).

[16]     *Id.* at 1008-09.